**John Gallivan, Plaintiff in Error, v. Frank M. McCarthy et al., Defendants in Error.**

**Gen. No. 14,347.**

MASTER AND SERVANT—*when doctrine of assumed risk may apply, notwithstanding order of foreman.* Not every direction from a foreman to a workman eliminates the assumption of risk; if it be "an order given to a servant in the ordinary course of his employment, even though the act to be done is dangerous," it "does not make the master liable for an injury which he could not be expected to anticipate."

Action in case for personal injuries. Error to Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed March 22, 1909.

JOHN C. KING and WILLIAM J. KING, for plaintiff in error; JAMES D. POWERS, of counsel.

E. S. HARTMAN, for defendants in error.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case the plaintiff in error sued the defendants in error in the Superior Court for personal injuries received on April 11, 1902, while he was engaged in their service (under employment by one Donahue, who had contracted with defendants for the use of his team), in hauling dirt from a tunnel excavation on Thirty-ninth street in Chicago, and dumping it on a vacant lot at Thirty-sixth and Butler streets.

The suit was begun on October 16, 1902, and came to trial in January, 1905, before a jury. The issues formed by the declaration and the pleas of not guilty filed by the defendants were submitted to the jury, which returned a verdict for the defendants, on which judgment was entered February 25, 1905. This writ of error was sued out January 16, 1908.

The declaration alleged the negligence of the defendants to consist in their having, through their foreman, ordered the plaintiff to upturn a wagon in a manner that unnecessarily and unreasonably endangered and jeopardized him. The wagon had been thrown down on its side to ·dump its contents, and then to pull it back into place chains were put over the body and connected by hooks at one end to the wheels, which were lying on the ground, and at the other end to a whiffletree attached by harness to two horses, which the plaintiff was driving. The horses were then started, and had the plan worked as usual the wagon would have been restored to an upright position. But in this instance the hook attached to the front wheel gave way. The rear of the wagon was pulled back to an upright position and stood on the rear wheels, while the front of the wagon remained on its side, with one of its front wheels flat on the ground. The construction of the wagon which permitted this is not explained but the fact itself is clearly stated in the pleadings and testimony. The

declaration alleges, that at this juncture the "defendants, through their said foreman, then ordered plaintiff to set back his horses; that plaintiff was then and there ordered to go on after one chain was hitched to the wheel at the end that did not come at the first effort; that then and there, by the direction of defendants' foreman, plaintiff drove his said horses forward, and one chain only being attached to said wheel, it pulled the tongue of said wagon suddenly around, striking plaintiff upon the back and shoulders, dislocating his shoulder and breaking three of his ribs, and otherwise seriously injuring plaintiff internally, externally and permanently".

The plaintiff asked no instructions and none were given at his instance, but at the instance of the defendants fourteen instructions were given, by which the jury were told that the plaintiff, to recover, was required to establish his case by a preponderance of the evidence, and then especially informed on the law affecting the assumption of risk by an employe, and on the doctrine of "fellow-servants".

They were told in an instruction complained of by the plaintiff in error, that—

"An employe is chargeable with knowledge of the ordinary conditions under which the business is conducted, and its ordinary risks and hazards, and will be presumed to have assumed all such risks and hazards, which to a person of his experience are or ought to be patent and obvious. Such risks and hazards are to be regarded as patent if by the exercise of ordinary care the same would be discovered. And if in this case, you believe from the evidence that the conditions which produced the alleged injuries were such that a person in the exercise of care and caution could have known of them, then the hazard, if any, is one that the plaintiff will be regarded as having assumed and there can be no recovery" .

The other material statements of the court in the instructions were that an employer is not liable for

an injury that may accrue to a servant by reason of the negligence of a fellow-servant in the same line of employment, and that the mere fact that one servant gives or has a right to give directions in the execution of the work, does not prevent him from being a fellow-servant of the other, acting with such other at the time of the accident, in the same line of employment; and, further, that the burden was upon the plaintiff to prove that the witness, O'Brien (the man who was alleged to have given the direction which resulted in the accident), was a foreman in the employ of the defendants, and had charge of the men working upon said dump, and that if he was not the so duly authorized foreman, the verdict should be for the defendants; moreover, that even though O'Brien was foreman for the defendants, yet if the accident happened from some negligence of said foreman which related to the foreman's duties as co-laborer with the plaintiff, and which might just as well have happened with one having no such authority, then the verdict should be not guilty.

The plaintiffs in error place their entire case on the alleged error in giving the instruction concerning assumed risk, quoted above. They insist that however acceptable this may be as the statement of a general rule, it was misleading and erroneous as applied to the facts in this case, which turned, as it is claimed, solely on the charge that a special order that resulted in the injuries was given to the plaintiff by a foreman or vice-principal. This eliminated, it is argued, all question of the assumption of risk, for on such a special order the employe is not held to assume the risk of any danger which is not so imminent and apparent that no man of ordinary prudence would incur it.

We do not think the instructions taken together could have misled the jury. The issues under the declaration and pleas were not exactly and wholly as plaintiff claims,—that is, the questions whether

O'Brien was a foreman and whether he gave the order involved.

They also included the question whether the foreman, if he was a foreman, was negligent in giving the order, and if the order was one which could be called special, coercive or peremptory, or one which directed the plaintiff to do anything outside of the ordinary duties for which he was employed.

For the exception to the general rule of assumed risk which depends on a special order involves these factors. Not every direction from a foreman to a workman eliminates the assumption of risk. If it be "an order given to a servant in the ordinary course of his employment, even though the act to be done is dangerous", it "does not make the master liable for an injury which he could not be expected to anticipate", says the Supreme Court in Swiercz v. Illinois Steel Co., 231 Ill. 456, in which case it reversed the judgments of the Circuit and Appellate Courts because of the instruction quoted by the plaintiff in error in this cause in his argument, and relied on to show the erroneousness of the instruction he is attacking.

We do not think the evidence in the case at bar bears out the idea that the order involved was in any sense a peremptory and coercive one. It was merely one given to this teamster of twenty-two years standing, in the ordinary course of the duties and employment he was pursuing. The danger, such as it was, was apparent, the appliances very simple, and, as we believe, the necessary precautions in the power of the plaintiff to take. On the assumption that O'Brien was a foreman, the case is more like Mohr & Son v. Mortewicz, 139 Ill. App. 173, than like any on which plaintiff in error relies.

The plaintiff asked no instructions in this case. If his counsel desired the jury carefully instructed as to the effect of peremptory and coercive "hurry orders", they should have brought that wish and the claim

that such an order was given, to the specific attention of the court.

We should be, however, far from willing to disturb the verdict of the jury, even though we knew it to be the result of a finding that O'Brien was not a vice-principal, but merely a fellow-servant of the plaintiff in the work which eventuated in the accident. On the contrary, we think that the more reasonable view to take of the evidence as a whole. We believe that justice has been done between the parties by the verdict of the jury, and the judgment of the Superior Court, and the judgment is affirmed.

*Affirmed.*